5-9. Is the appellant ready to proceed? We are, Your Honor. You may. Thank you, Your Honor. Joseph Carl Reward on behalf of the appellant, along with Paul Nesbitt, co-counsel. May it please the Court, I'm going to start today, I'm going to split my time with Mr. Nesbitt, but I'm going to start today with our error, Council 1, that's the first issue. The trial court's error in not granting our motion to dismiss or stay in the federal court proceeding. For the Court to understand why that was an error that should be reversed, you have to understand the history of this case in Louisiana. This suit was initially filed against Dana Howard, the employee of Anadarko and Anadarko, back in February, February 10th of 2017. They filed an answer, and in that answer they filed on May 15th, 2017, there was no objection whatsoever to the law being applied to the case, there was no objection to venue, there was no discussion or mention of a master service contract. None. Didn't even come up. They filed an exception and no cause of action. Granted, it goes to the First Circuit Court of Appeals, the Second Circuit, by the way, and the State Secretary has been refused, it goes to the First Circuit, they're reversed. So then it comes back and we file an amended complaint. They filed an amended complaint on July 17th, 2020. They file another summary judgment. That summary judgment is granted. It goes to the State Fifth Circuit Court of Appeals. The Fifth Circuit Court of Appeals renders an opinion. It says, no, no, no, no. You're in this case. We're going to apply comparative faults under Louisiana law to this case. That summary judgment, they argued with Louisiana law, they said there's an in plain hands doctrine here in Louisiana. They said nothing about venue. They didn't argue about choice of law. They wanted a judgment. They got a judgment. The Louisiana Fifth Circuit reversed it and said, no, uh-uh. Under Louisiana law, you're in this case. Even though it's a racketeering case where they and their employee have been accused of criminal acts, the court said, because one of our officers was also involved in the racketeering, the court said, well, we're going to sparse that out in comparative fault under Louisiana law. Louisiana law also has a law, a civil code, which, as you know, is the law of this state. We don't have, or at least it's kind of like a lot of other states do, because we have a civil code. It mandates that they file a counter claim or a re-convention of the name we call it if it arises out of the same transactional occurrence as the main demand. They didn't. They didn't file anything. They just wanted out of a case based on Louisiana law in Louisiana. Then, after they got that bad opinion, that bad judgment, saying, no, you're in it, guys, and Louisiana law applies, it's going to be a comparative fault analysis. They didn't like that. So what did they do? They go back to state court and file a second summary judgment. This time they raised for the first time, hey, we think venue should be over in Harris Town in Texas. Never brought that up. They've lost what they wanted, so now we're going to find another venue to go to. While that summary judgment is pending, they file suit. They went ahead and filed suit in Harris Town, Texas, Federal Court, Southern District Court of Texas, before the district judge could even rule on whether venue was good or not. After they removed the case, several months later, that judge knows they've removed the case. They've not removed, I'm sorry, that they filed a new case. That judge says, yeah, I'm going to dismiss this case without prejudice. You guys go fight over in Texas. We took an appeal. The reason we took an appeal, we asked this court to stay this proceeding, and the court simply politely declined to stay it. Their argument was made here is, oh, I don't know, this circuit, they'll let me get a panel. No, we got a panel. We had a little argument a month ago. We expect an opinion any minute now. And I don't want to prognosticate what I think is going to happen, but it was not a good day for them if they were all arguing. I think that opinion is coming out any day now, and I think that opinion will affect this court's view of this case. The law is very clear. When you go into a case and file your answer, you don't want to raise any issues. You seek relief. You get your relief. It's overturned on appeal. Judicial estoppel prohibits you from saying, look, we're going to gather up our marvels here. Let's go play somewhere else. We don't like these guys. You can't do that. You just can't do that. This court has said many times, and going back to the U.S. Supreme Court in 1898, they said you can't do this, a removal where you have a statutory right to remove. Not, I'm just going to go do something else. I have a statutory right to remove. The Supreme Court in Rosenthal v. Coates, 1893, said you cannot, quote, experiment in state court and, upon receiving an adverse decision, transfer it to a federal court. Your point is that they failed to make certain arguments in the previous proceeding? Failed to make the claim at all. Not just failed to make an argument, Your Honor. Is judicial estoppel for arguments that you make or arguments that you don't make? It can be both. What's your best case for the proposition? Normally, judicial estoppel is about positions that parties assert. They asserted the position. Well, you just said, hold on, you just said that this was about an argument they didn't make. Not an argument that they did make. No, no, they made the argument that Louisiana law applies, Your Honor. That's what the whole basis of their summary judgment was on. They made that argument. But the Master Service Agreement contract says Texas applies. The Master Service Agreement, and they came in, Your Honor, and did not give us any notice that it was even on the radar. They waited six years before they even raised it. Being in this business, you know the first thing you would do is like, oh, my goodness, there's a claim here. We need to put them on notice. We want reimbursement for expenses and indemnity. They never did that. The law is clear. You cannot wait. The contract says you have to have, and my co-counsel is going to discuss this issue in great detail, you have to make demand and put them on notice. They said, well, y'all knew about it. Y'all knew about the claims. Claims are out there all the time. We don't know that they want indemnity or defense costs until six years later, after they've already litigated and judged that they didn't fail to. What they did is they made the argument that Louisiana law applies to this case, not Texas law, not a contract. That was their argument. And it's only when they did not win that argument that they made. What they failed to do is put us on notice. So you failed then under the second prong of judicial estoppel, that they failed to win on it. Yeah, they thought they won, but then it got overturned completely. So they didn't prevail. No, they did not prevail. So judicial estoppel doesn't apply for that reason. Well, no, I think judicial estoppel does apply. They made the argument. What's your best case for the proposition that we applied judicial estoppel for a position that is unsuccessful? I'm sorry, I'm asking for a case. I don't have a case that we can cite to you, Your Honor. But, Your Honor, this is what's going to happen. If the Fifth Circuit, and I think they are going to rule in our favor, what are we going to do then? You just said you weren't going to prognosticate. Now you're prognosticating. Are you asking us to continue this case? Because why are we here if this case is going to be voted by the person? I would ask you to stay it. And I'm suggesting to you now, any day now, we're going to get an opinion. And it should affect the way you look at this case. Because maybe they win. I think they're going to lose. If you ask me, and I suspect if you ask the attorney who argued for them, that's what they're thinking too. It's coming back. And then what are we going to do? We're going to have a Louisiana case that says one thing and a Mississippi federal case? What happens to federalism? We're just going to let a federal judge decide the case when Louisiana has already issued an opinion saying Louisiana law does apply and this is the way we're going to do it? How much money is at stake in that Polanski lawsuit? How much money is at stake? What's it worth? About, I think, $38-something million. Is it still on appeal? Yes. It's coming back. It's on appeal. And again, I'll tell Judge Ho. I'm not going to prognosticate because I've been hit in the head with a brick before when I thought I'd won it. But it will come back and it will be back in state court with all of our claims pending. I see my time's up and I'm going to defer to my co-counsel and we will reserve our time for the rest of our rebuttal. Thank you. May it please the Court. Paul Nesbitt, co-counsel with Mr. Ward. I was planning to start with a little presentation. Let me start by answering Judge Ho's questions. Sir, on page 16 and 17 of AESI's reply brief, we have our cases on judicial estoppel. Specifically, out of Louisiana, we have the Foster v. Bias case. And which one says that judicial estoppel applies based on an argument that is rejected? Hancock Bank v. Louisiana, the 2014 case cited underneath that, where the party seeks affirmative relief and obtains it. That triggers judicial estoppel under Louisiana principles. I'm sorry, where a party makes an argument and obtains it? And obtains it. Right, so that's not answering my question. It's been conceded by your co-counsel that you're arguing for judicial estoppel based on an argument that was made and rejected. You're talking about a case where judicial estoppel attaches based on an argument that was made and granted. Yes, that's correct, sir. To amplify on Mr. Ward's case, we believe that the soundest approach for the reasons he explained for this court would be to study this appeal. To allow the Louisiana Court of Appeal to decide whether Anadarko has waived his rights under the contract's provisions for both exclusive venue, Texas substantive law, and indemnity by litigating the matter for six years in Louisiana State Court. The Louisiana State Court of Appeals has that issue pending before it right now. They're going to have to decide that. We believe they're going to reverse and remand it back to the parish court where the case will proceed. At that point, the parish court will decide the waiver question. And we believe that that approach, allowing this court to put this appeal in abeyance for a short time, will allow it to prevent piecemeal litigation. That's what's happening right now. The master service agreement is part of the parish court lawsuit, and it's part of the appeal. And now it's pending before this court. Would the state court remand a final exam of law? Is that what you're saying? Yes, sir. Absolutely. That's our position based on six years of proceeding that case under Louisiana substantive law. Texas never came down, not once, and with good reason, Judge Klein, because the operations that gave rise to the disputes and the master service agreement and the lawsuit happened in Louisiana. These are Louisiana oil leases that my client worked on for Anadarko. As the court is aware, many of the precedents go into excruciating detail on the factors that govern the application and choice of law in hundreds of these disputes. They clogged this court for decades and required minute detail to determine what the factors are. So the fact that the master service agreement specifies that Texas law applies has no meaning? No, no, sir. Not no meaning. It's just not significant. It's not controlled. The court must conduct a careful analysis of the factors when a party objects to choice of law. We did that here in our response to the summary judgment. We went through little detail and the declaration of Stanley Pulaski, ten pages long, showing where the operations took place, showing that the contract was signed in Louisiana by my client, showing that the bills that were the subject of the Pulaski lawsuit came out of my client's office in Louisiana, and that Anadarko had an office there in Louisiana who was overseeing these projects. It's all in the record. The district court gave no warning to it. It was simply mechanically out there. Didn't a significant amount of work occur in the state that was not Texas or Louisiana? Wyoming. Wyoming. There were some operations in Wyoming, and those are separately discussed, but the majority of the work was done on leases in Louisiana. So we believe that was controlling, and the district court paid no heed to that and simply jumped on the language of the master service contract. Separate from Mr. Gore's point of the estoppel, judicial estoppel, that should arise from a party's six years of seeking affirmative relief under Louisiana law, including two appeals to the Louisiana Court of Appeals. That is why we think the controlling precedence of this court, and also let's not forget public policy. Public policy in the state of Louisiana forbids this sort of indemnity for someone's own unlawful conduct. Section 2004 of the Civil Code of Louisiana. Not to mention, even if by some strange reason Texas law were deemed to apply, Texas has the same doctrine. We don't allow indemnity for someone's illegal or unconscionable conduct. That's against the public policy of Texas to indemnify someone who's deliberately engaged in malfeasance. So for that reason, we believe the district court erred in hastily rubber stamping the Texas law statement in the contract without evaluating all the factors that were before it in the record. So then separately flowing from that error was the second error in approving all the attorney's fees that Anadarko sought from the underlying district court case in Washtenaw Parish, $983,000. We went to great lengths in the record and in the briefing to show the timing was correct. We never got notice of any intent by Anadarko to seek these fees until we got sued in the declaratory action in Houston. And as the courts are aware, the notice provision serves a purpose in a master service contract. If you want me to pay your bills, you have to send me the notice. And that's specifically what Anadarko wrote into its own contract in paragraph 12. It requires prompt written notice. We didn't get it. What we got was served with the lawsuit. So there was nothing in the summary judge's briefing about damages, about attorney's fees. There was nothing in the summary judge's briefing by them about attorney's fees. Not in the motion itself, Your Honor, but in a separate post-judgment motion under Rule 54, which we also objected to, because we believed when we cited cases to the district court that those attorney's fees are part of the remedy. They're not something that should be done under Rule 54 post-judgment. Yet the court ignored our objections, ignored our objections to the stack of attorney bills, which are blacked out and raised here in the record, that provided no information about what the legal services are. So that is the second part of our concerns about the error in the underlying rules. Did you raise that concern below, that they had all this information redacted from the fees bill?  We did just raise it. But the district court simply signed the judgment for the full amount. I see I'm out of time. We'll reserve all the remaining time. All right. Thank you, counsel. Good afternoon, Your Honors. I'm Keith Jarrett. May it please the Court, I represent the FLE Anadarko Trillium. And I would start by saying there are really two simple issues on appeal today. One is whether Judge Hoyt acted correctly in applying a broad indemnity provision to the conduct alleged in the underlying lawsuit that the AES has sued Anadarko in, in Louisiana State Court. And the second issue is whether he properly awarded term fees for the defense of those cases and for the prosecution of this suit for indemnity. And the answer for both questions is most decidedly yes. Judge Hoyt determined that by looking at the plain language of the parties' agreement, which is the contract is not in dispute. He determined that the indemnity provision is very broad. It uses the well-known arising out of in connection with the work language to make the claim definition very broad. And it uses the in connection with language in the specific indemnity provision at issue. The specific indemnity provision at issue specifies that AES is to provide Anadarko with indemnity for claims involving AES's violation of laws, of applicable laws. And applicable laws is a defined term. And there is no dispute. It is an admitted fact that AES committed violations of law. Criminal conduct. They use the language money laundering, kickback, fraud. There's no dispute. That's an admitted fact. How long did that go on? I'm so sorry. How long was that behavior? It was discovered in 2012 by AES. And it concerned a project in Wyoming. And the project in Wyoming lasted, I'm not sure the record reveals that. The contract, the master service agreement, dates from 2008. The conduct at issue was in 2012. And I would then point out that the clause, Judge White found the clause unambiguous, the indemnity provision at issue, and that the allegation in the state court lawsuit fit like a hand in glove. And there is no possible error in that conclusion. The argument they make that has been made about motion to stay or to evade this action, let me start by saying, to use a cliche, that's a red herring. One thing, that argument has been waived. It is not an issue on appeal. It has, they filed it in the district court, lost. They didn't include it in their briefing here, so they filed a motion with the court asking this court for a stay, which Judge Engelhardt denied after briefing. So that argument has been waived, but more importantly, substantively, it has no basis. The issues in the Louisiana appeal, that is the predicate for their request for a stay, have nothing to do with the issues here. The indemnity issue is not at all, has never been raised by any litigant in the Louisiana state court proceeding. The issue on appeal in the Louisiana state court is one of venue only. The argument that, the argument is that we sustained, we succeeded in district court in having a district court rule that the proper venue for the suit was in Texas. The ADS challenged that rule in appeal by arguing that we had waived our ability because the case was too late, and procedurally we had waived it. But that has nothing to do with indemnity. The indemnity claims were never raised in the Louisiana state court action because indemnity actions, both in Louisiana and Texas, are not compulsory county claims. There is this black letter law in both Louisiana and Texas. They were not asserted in the Louisiana state court lawsuit, and nor could they have been because the contract requires that those claims be raised in Harris County, Texas, which is what Anadarko did. So what is the claim in Louisiana? The claim in Louisiana, in the district court on appeal, Your Honor, in the district court, it's a, I'll just put it, it's an unusual lawsuit. The allegation is that ADS and its president were conspiring with subcontractors to overbill Anadarko on an oil spill remediation project in Wyoming, and that when Mr. Palouse, the other co-owner of ADS, discovered that issue, he brought it to Anadarko's attention, whereupon Anadarko stopped doing business with ADS, and ADS seeks to sue Anadarko for that. Originally as filed, that was the whole allegations. The suit was later amended to allege that an Anadarko employee named Dana Howard was complicit in that program, and she permitted it. That was a later amendment. That is very much disputed by Ms. Howard and by Anadarko, but more importantly for this case, it's not relevant because the issue here is the application of admitted wrongdoing by ADS to the indemnity provision in the contract, and they fit like this. And there's no, if one were to look at that indemnity provision, they would see there's no escape hatch, there's no language that would allow ADS to evade its indemnity obligation by alleging complicity by Ms. Howard, and to find that, that's one of the arguments they make in their brief, but to find that would require you to rewrite the contract, and that, of course, is not permissible under Texas law. And they raise a public policy argument that Mr. Nesbitt was talking about, saying, hey, wait a minute, we allege that Ms. Howard was at fault. How can that be fair? Well, the answer to that is Ms. Howard's fault is not relevant under the contract's terms. There's no, the indemnity provision at issue makes no reference to Anadarko's conduct or to any other conduct. We are seeking indemnity for ADS's admitted violations, which is exactly what Judge Hoyne found in his opinion when he considered that argument and said it was not relevant. They would argue, I suppose, that not in the language of the indemnity provision itself, but that in application, what's happening here is Anadarko seeking indemnity for conduct that involved Ms. Howard. But again, that's not true, nor is it even relevant, because under Texas law, Anadarko to prevail its indemnity claim need not prove whether Ms. Howard was or was not complicit, and that's the test in Texas. If you want to make an argument based on public policy in Texas, Texas says, and this is Damasio's case, that only if an indemnities, like us, conduct, or a plaintiff's conduct, that's not in the indemnity context, only if a plaintiff's illegal conduct is a necessary predicate to recovery or is a claimant barred from pursuing a claim. And, of course, here, to prevail under the indemnity provision, we only have to prove ADS's criminal conduct, which, of course, they admitted. So, it is not, that's why Judge Hoy properly found that Ms. Howard's conduct is not relevant to the indemnity action. The other issue on appeal, they raised the notice defense, but that argument is dispensed with by the Fifth Circuit case of Offshore Drilling Company. That court held that when the claims involve the same parties, notice is not required because they actually have actual notice, and in Texas, actual notice is a defense for a claim for lack of notice. So, that's Offshore Drilling's Fiss Certification 2010 on point, and Actual notice by the lawsuit? Actual notice by the lawsuit, yes, ma'am. And the Fifth Circuit has held that the notice provision serves no purpose when the underlying claim is between the parties. And so, that's the situation here. The underlying case in Louisiana is between the parties, so notice is not a defense for lack of notice. The other issue, that essentially covers the indemnity provision. The other issue on appeal is the attorney's fees question, and of course, that's reviewed for abuse of discretion, and Judge Hoyt made it clear in his ruling that he had the information he needed to make a finding, and specifically, he said that, well, I think I'll point out first that the reasonableness of the fees that Anadarko received was never challenged in the district court, a point made by Judge Hoyt in his opinion, where he said, the court notes that AESI has not challenged the propriety of an attorney's fee award, apart from its motion to strike a declaration, nor has it challenged the necessity nor reasonableness of the requested award. And then he goes on to say that the court deemed the attorney's fee to be a mixed question of law and fact, and a matter for the court to determine based on experience, wisdom, and common sense, which he did. And of course, he goes on to say in his footnote that he examined all the exhibits related to fees and costs, found them consistent with usual and customary fees for this type of level of litigation, and that they had been incurred by and paid by Anadarko on his own account. Well, since the attorney's fees for the underlying lawsuit was sought, and damages for the breach of contract action, aren't they elements of the breach claim? Respectfully, Judge, they're not. And I think that Richard's indication in the Fifth Circuit addresses that issue. And that court essentially said that attorney's fees for the prosecution of the defense of a claim are not damages under Texas law. And then specifically, motions for attorney's fees provided by contract are permissible under Rule 54. And of course, our whole fee claim is premised on a contract. So respectfully, Judge, I don't believe, I think Richardson steers us away from that. How do you reconcile that with the United States warrants? I'm sorry, Judge, I don't know that case. Apologies for that. I would point out that in the Richardson case, the reason I like it, not only does it support me, but it provides an example of when attorney's fees would be an element of damages. And the example it uses is where a client sues a lawyer for malpractice. And it says that in that circumstance, there's no provision for fees by contract, but the attorney's fees that have been paid would be an element of damages in that context. So I think the distinction that the court is drawing is when a party sues attorney's fees under a principle other than a provision of contract, then it might be an element of damages. But that is not the situation we have before the court. I want to be fair with my earlier question, at least give you a chance to answer it. The case is American Home Assurance versus United Space Alliance, if that helps you. And it's fine if it doesn't. Sorry. I should know the case better. So I do think that Rule 54D, in fact, I would point out that Rule 54D is mandatory. Because one of the arguments being made both in the briefing is that they were entitled to a jury trial on this issue as opposed to motion. But Rule 54D says that claims for attorney's fees must be made by motion unless, Your Honor, as Young pointed out, the fees are an element of damages, which we think they're not, based on the Richardson case. I think, Your Honors, unless you have some questions, I think I pretty much covered everything that I had intended to cover. There's no requirement that you use all that time. Well, I'll give the time back, Your Honor, if you don't have any questions. I think I've covered the point that I wanted to address. We'll take it. Thank you, Judge. Rebuttal? I think they're agreeing, Your Honor. First of all, Your Honor, I think American Homes does play in this, in that in that case, the attorney fees have to go to a jury. The attorney fees are damages in their complaint. They're damages. This is not a sanction-type deal where, you know, Rule 11 clause. These are their damages. I want the court, I can't say that I've read it recently, but the Fourth Supplemental Petition, I hope you've had someone read it and outline it for you, counsel for the last several years, excuse me, counsel, Anadarko for the last several years has played the victim. They're not the victim. If you read the amended petition, when they found out that these guys were overbilling the racketeers, the enterprise, and I have to admit, the president of our company was a member of that enterprise until he left the firm and went and joined them in another company and continued overbilling. When they looked at that, we called the FBI in to look at it. They realized that in addition to stealing money from them, they were under-reporting the environmental results, so that hundreds of millions of dollars of environmental results were taken off their books. They're told that this farm here in Louisiana is completely, now it's clean. It wasn't. It wasn't. If you want to look at whether he's being honest, they always keep saying, oh, this is all our money. It's not. If you look at exhibits that we've put into the record, attached to that, the name of Mr. Pulaski, these exhibits, Exhibit G, Exhibit F, they're the receipts from Louisiana. There were two major sites in Louisiana where this was going on. Admittedly, we had some in Oklahoma, zero in Texas. The majority of this is in Louisiana. So, they were named part of the racketeering enterprise because they refused to stop it because they were enjoying the profits from it. When the FBI shows up, and this is all in the complaint, when the FBI shows up, they wave them off. We don't want any investigation here. Leave. We amended the petition when we got some discovery that showed all this, and my client was calling them, recording their discussions with the lower-level employees, but this is what happened. It's all in the record. So, they were not the victim in this case. They are a defendant, liable for fraud. And when we talk about this master service contract, I admit my guy, the president of my company for several years, was involved. They were involved committing fraud. In both Texas and Louisiana, you cannot get reimbursed an indemnity for fraudulent or intentional condom. You can't. We have rules here, and I'm not a Mexican lawyer, but my folk also put it in their briefs. You cannot get reimbursed for fraudulent condom. I don't know what it is to say that. That's what they're trying to do, and that's what Judge Hoyt, he awarded them 100% without any investigation. Everything is blacked out. We don't even know what they're charging for. The co-defendant who was their employee, who was involved in the fraud, we're supposed to pay for all her attorney fees as well, on a summary motion that we don't even get to ask questions. Let me ask you about your position that you're entitled to a jury trial for the attorney's fees. How do you get around the Marshall decision? Well, Your Honor, I think this is different. This is a case that the damages sought are attorney fees and expenses. I don't think we can use Rule 54 to declare what that is. I think, like any other damages, lost profits or whatever, they have to present it, and we're entitled to a jury. In this case, we didn't get a jury. We don't even get to see the evidence. We don't even get to see. And the judge didn't look at the evidence. He just said, yeah, okay, a million dollars. That sounds good to me. That's just not right. So, Your Honor, I think that that opinion, that judgment has to be reversed, and I would strongly argue that it should be dismissed, that our motion to dismiss should have been granted, because at the end of the day, we're going to wind up with a Louisiana decision, we're going to wind up with a federal court, a Texas decision, that are going to be at odds with each other. And that's just not fair. Thank you for your time. Thank you. Thank you, counsel. We'll take this matter under advisement.